USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 96-1827 UNITED STATES, Appellee, v. EVELYN LHERISSON, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ John R. Gibson,* Senior Circuit Judge, ____________________ and Pollak,** Senior District Judge. _____________________ _____________________ John L. Roberts, by appointment of the Court, for appellant. _______________ Andrew Levchuk, Assistant United States Attorney, with whom ______________ Donald K. Stern, United States Attorney, was on brief for _________________ appellee. ____________________ December 2, 1997 ____________________  ____________________ * Of the Eighth Circuit, sitting by designation. ** Of the Eastern District of Pennsylvania, sitting by designation. Per Curiam. Evelyn Lherisson was convicted of one Per Curiam. ___________ count of bank fraud, in violation of 18 U.S.C. 1344, and three counts of making false statements to a federally insured financial institution, in violation of 18 U.S.C. 1014. On appeal she argues that (1) the government engaged in selective prosecution in prosecuting her but not the more culpable principal of the fraud, (2) that she received ineffective assistance of counsel, and (3) that there was insufficient evidence to support the jury s findings of guilt on any of the four counts of which she was convicted. Because we find no reversible error, we affirm. I. In July of 1988, Evelyn Lherisson, who represented herself as the trustee of a substantial family trust located in the Cayman Islands (the "LPH trust"), was introduced to Mary Anne Krupsak, a partner in the Albany office of a New York law firm. At the time, Krupsak was a shareholder in Valyte International, a small corporation that was undergoing financial difficulty. Lherisson told Krupsak that she was interested in using her family trust s assets to help small businesses such as Valyte and gave Krupsak various documents that purported to confirm some of the trust s assets. In the fall of 1988, Valyte began negotiations with Heritage NIS-Bank for Savings concerning a $350,000 line of credit Heritage had extended to Valyte. Valyte had drawn heavily on the line of credit and Heritage had lost some confidence in -2- -2- Valyte s ability to pay its debts. On December 27, 1988, Krupsak and the other shareholders met with Heritage officer Michael Audette and Heritage attorney Steven Weiss to discuss the possibility of individual Valyte shareholders providing additional collateral for the loans in exchange for Heritage not calling in Valyte s obligations. At that meeting Krupsak informed Audette and Weiss that Evelyn Lherisson might be able to assist in providing collateral for Valyte s obligations to Heritage. Audette then spoke on the phone with Lherisson, who advised him that she would obtain a letter of credit for $1 million as additional collateral for the Valyte loan. On December 29, 1988, a $1 million letter of credit made out to Krupsak and drawn on the First Investment Bank of Garland, Texas, was faxed to Heritage. Heritage told Krupsak that it wanted the letter modified to name Heritage as beneficiary instead of Krupsak. Krupsak testified that she related this request, along with other proposed modifications to the December 29, 1988 letter of credit, to Lherisson, who replied that she would not modify the letter but that she would send a new letter of credit to replace it. Krupsak told Heritage of Lherisson s plan to send a new letter of credit and, as an interim measure, assigned her interest in the December 29, 1988 letter of credit to Heritage. On March 24, 1989, Heritage received a document, bearing the signature of Lherisson as trustee of the LPH trust, constituting a $1 million letter of credit to Heritage. -3- -3- Thereafter, Lherisson and Krupsak commenced negotiations with Heritage for a $4 million loan to Valyte to be secured by assets of the LPH trust. On April 29, 1989, in support of the loan application, Krupsak faxed a copy of an "Irrevocable Trust Agreement" and a separate specimen "Trust Agreement" both of which were signed by Lherisson. On May 8, 1989, Heritage received a letter, signed by Krupsak s secretary on behalf of Lherisson, which stated that the proposed $4 million loan would be collateralized by United States Treasury notes. At trial, the government introduced evidence that neither the First Investment Bank of Garland nor the LPH trust ever existed. The tax identification number used by Lherisson for the LPH trust was not assigned to any person or business and the registrar of the Cayman Islands testified that no such trust was registered with his office. A handwriting expert testified that the signature on the March 24, 1989 letter of credit was in fact Lherisson s, and Krupsak s secretary testified that she never signed or sent any correspondence on behalf of Lherisson without being directed to do so by Lherisson herself. The jury found Lherisson guilty of one count of bank fraud, in violation of 18 U.S.C. 1344, and three counts of making false statements to a federally insured financial institution, in violation of 18 U.S.C. 1014. The false statement counts were based on: 1) the $1 million December 29, 1988 letter of credit; 2) the $1 million March 24, 1989 letter of credit; and 3) the May 8, 1989 letter. -4- -4- Post-trial, Lherisson underwent a psychiatric examination. At sentencing, Lherisson s attorney asserted that Lherisson suffered from delusions and was operating in a diminished mental state during the time she was communicating with Krupsak and Heritage. The district court sentenced Lherisson to 15 months imprisonment and three years supervised release. II. Lherisson advances three arguments in this appeal. First, Lherisson argues that her convictions arose from selective prosecution because the government chose to prosecute her ("an indigent black woman who was suffering from a severe mental disability") and not Mary Anne Krupsak (a "white, non-disabled person" with "political and financial clout"). Second, Lherisson claims that she received ineffective assistance of counsel. Third, Lherisson claims that there was insufficient evidence to support the jury s verdict. Lherisson did not raise her selective prosecution claim prior to trial as required by Fed. R. Crim. P. 12(b), and therefore has waived this claim, Fed. R. Crim. P. 12(f), see also ________ Tracey v. United States, 739 F.2d 679, 682 (1st Cir. 1984), cert. ______ _____________ _____ denied, 469 U.S. 1109 (1985), unless "exceptional circumstances" ______ exist which excuse her failure to raise the claim in a timely fashion. See United States v. Gary, 74 F.3d 304, 313 (1st Cir.), ___ _____________ ____ cert. denied, 116 S. Ct. 2567 (1996). Lherisson argues that her ____________ claim of selective prosecution became manifest only after trial -5- -5- when the District Court ordered and obtained reports on her mental condition. Lherisson attributes her failure to undergo psychiatric evaluation (and hence her failure to raise the claim of selective prosecution) prior to trial to the ineffectiveness of her trial counsel. However, Lherisson did not raise the claim of ineffective assistance of counsel before the district court, and therefore we are left without the factual development necessary for adequate review. Accordingly, we will follow our customary practice of not addressing claims of ineffective assistance raised for the first time on appeal. See United States v. ___ _____________ Carrington, 96 F.3d 1, 6 (1st Cir. 1996), cert. denied, 117 S. __________ _____________ Ct. 1328 (1997). Our declination to consider this issue now is without prejudice to Lherisson s entitlement to raise the issue in a collateral challenge to her conviction. See United States ___ _____________ v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). ____ In her final claim, Lherisson argues that there was insufficient evidence to support the jury s verdict. This claim takes two forms. First, she asserts that she could not be convicted of aiding and abetting without evidence of a culpable principal. However, on each count the district court instructed the jury in conformity with 18 U.S.C. 2(b), which provides that: [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. 18 U.S.C. 2(b). Under this section, a culpable principal is -6- -6- not required. "[A] defendant may be convicted as an aider and abettor through proof that he caused an innocent person to commit a criminal offense." United States v. Tashjian, 660 F.2d 829, ______________ ________ 842 n.26 (1st Cir.)(alterations and internal quotation marks omitted), cert. denied, 454 U.S. 1102 (1981); see also United ____ ______ _________ ______ States v. Dodd, 43 F.3d 759, 762-63 (1st Cir. 1995).  ______ ____ Lherisson also argues that the government did not show that her statements to Heritage were made with the intent to defraud. Where a defendant challenges the sufficiency of the evidence, this court must look to see "whether, drawing all inferences in the government s favor, a rational jury could find guilt beyond a reasonable doubt." United States v. Montilla- _____________ _________ Rivera, 115 F.3d 1060, 1063 (1st Cir. 1997). Lherisson does not ______ dispute that the trust never existed and that the letters of December 29, 1988, March 24, 1989, and May 8, 1989 were false. Audette and Krupsak both testified that Lherisson was aware that Valyte s negotiations with Heritage were for the purpose of preventing Heritage from calling in Valyte s loans or obtaining new loans for Valyte. A jury could have reasonably inferred that Lherisson knew the trust did not exist and that, in making statements about the trust to Krupsak and representatives of Heritage at a time she knew that they believed she was going to use the trust s assets to help Valyte in its negotiations with Heritage, Lherisson intended to defraud Heritage. The jury s verdict is therefore supported by sufficient evidence. III. -7- -7- For the foregoing reasons, the judgment of the district court is affirmed. -8- -8-